IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


WILLIAM JOSEPH KELSO,              )
                                   )
                 Plaintiff,        )
                                   )
       v.                          )        1:12CV331
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner                )
of Social Security,[1]             )
                                   )
                 Defendant.        )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

       Plaintiff, William Joseph Kelso, brought this action pursuant

to the Social Security Act (the "Act") to obtain judicial review of

a final decision of Defendant, the Commissioner of Social Security,

denying Plaintiff's claim(s) for Disability Insurance Benefits

("DIB"). (Docket Entry 1.) The Court has before it the certified

administrative record (cited herein as "Tr. __"), as well as the

parties' cross-motions for judgment (Docket Entries 10, 12). For

the reasons that follow, the Court should remand this case for

further administrative proceedings.

## I.  PROCEDURAL HISTORY

       Plaintiff applied for DIB, alleging a disability onset date of

September 28, 2009. (Tr. 157-59.) Upon denial of that application

_____

       [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013, resulting in her substitution as Defendant, pursuant to
Federal Rule of Civil Procedure 25(d).

initially (Tr. 65) and on reconsideration (Tr. 78), he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 110). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 25-64.) The ALJ thereafter ruled Plaintiff not disabled under the Act. (Tr. 6-22.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through September 30, 2013.

2. [Plaintiff] has not engaged in substantial gainful activity since . . . the alleged onset date.

3. [Plaintiff] has the following severe impairments: failed neck syndrome; cervical and lumbar facet arthropathy; lumbar degenerative disc disease, with osteoporosis; chronic obstructive pulmonary disease; acid reflux disease; history of right knee medial meniscal tear with arthroscopic surgery; and depression.

. . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that he can occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel[,] crawl, and crouch. [Plaintiff] must avoid concentrated

exposure to environmental irritants, and he requires a
sit/stand option, allowing [Plaintiff] to stand for one
to two minutes every hour.  Additionally, [Plaintiff] is
limited [to] performing simple, repetitive tasks in a
low-stress environment.

. . . .

6.   [Plaintiff] is capable of performing past relevant
work as a cashier II.  This work does not require the
performance of work-related activities precluded by
[Plaintiff's] residual functional capacity.

7.   [Plaintiff] has not been under a disability, as
defined in the [] Act, from [the alleged onset date]
through the date of this decision.

(Tr. 11-16 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

of [judicial] review of [such] a decision . . . is extremely

limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A.  Standard of Review

In actions challenging the denial of Social Security benefits,

"courts are not to try the case de novo."  Oppenheim v. Finch, 495

F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must

uphold the factual findings of the ALJ [underlying the denial of

benefits] if they are supported by substantial evidence and were

reached through application of the correct legal standard."  Hines,

453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'" <u>Hunter v.</u>
<u>Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v.</u>
<u>Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a
mere scintilla of evidence but may be somewhat less than a
preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001)
(internal brackets and quotation marks omitted). "If there is
evidence to justify a refusal to direct a verdict were the case
before a jury, then there is substantial evidence." <u>Hunter</u>, 993
F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal
brackets and quotation marks omitted). "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the
[Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks
omitted). "The issue before [the Court], therefore, is not whether
[the claimant] is disabled, but whether the ALJ's finding that [the
claimant] is not disabled is supported by substantial evidence and
was reached based upon a correct application of the relevant law."
<u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must note that "[a]
claimant for disability benefits bears the burden of proving a

disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Hall</u>, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."

<hr>

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. Supplemental Security Income . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2
(4th Cir. 1999).[3]  A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, "the claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, i.e., "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual function capacity
('RFC')." Id. at 179.  Step four then requires the ALJ to assess
whether, based on that RFC, the claimant can "perform past relevant
work"; if so, the claimant does not qualify as disabled.  Id. at
179-80.[4]  However, if the claimant establishes an inability to

---

[3] "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citation omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the
claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative
regulations require RFC to reflect claimant's "ability to do sustained work-
related physical and mental activities in a work setting on a regular and
continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an
equivalent work schedule" (internal emphasis and quotation marks omitted)).  The
RFC includes both a "physical exertional or strength limitation" that assesses
the claimant's "ability to do sedentary, light, medium, heavy, or very heavy
work," as well as "nonexertional limitations (mental, sensory, or skin
impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only
(continued...)

return to his or her prior employment, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry the "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignment(s) of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) at step four, "the ALJ incorrectly determined that Plaintiff's work as a cashier II . . . was past relevant work because [the ALJ] mistakenly believed that it was performed at substantial gainful activity levels" (Docket Entry 11 at 6); and

2) in formulating Plaintiff's RFC:

---

[4](...continued)
after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

a) "the ALJ did not fairly characterize [Plaintiff's] testimony and did not fully consider the factors [the ALJ] was required to evaluate in assessing [the] credibility [of Plaintiff's symptom reporting]" (id. at 7); and

b) "[t]he ALJ did not properly evaluate the opinion of . . . one of [Plaintiff's] treating physicians" (id. at 16).

Defendant argues otherwise and seeks affirmance of the ALJ's ruling(s). (Docket Entry 13 at 3-20.) Plaintiff has shown errors on the above-quoted grounds that require a remand for further administrative proceedings.[6]

## 1. Past Relevant Work Determination

The ALJ ruled Plaintiff not disabled under the Act based on the step four finding that he was "capable of performing past relevant work as a cashier II." (Tr. 16.) The Commissioner's regulations define past relevant work ("PRW") as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b) (emphasis added). To support the determination that Plaintiff's prior work as a cashier II constituted PRW, the ALJ stated as follows:

---

[6] Plaintiff also contends that substantial evidence does not support the RFC assigned to Plaintiff by the ALJ. (Docket Entry 11 at 18-19). The Court need not reach that issue because the further administrative proceedings necessitated by Plaintiff's showing regarding errors in the RFC formulation process may result (upon remand) in the ALJ's adoption of a different RFC or, at a minimum, different subsidiary findings by the ALJ related to the RFC that could affect any assessment of the evidentiary sufficiency of the RFC determination.

8

[Plaintiff] reported working within the past 15 years as a cashier II. This job lasted long enough for [Plaintiff] to learn the job. Moreover, [Plaintiff] performed each of these jobs [sic] <u>at levels of substantial gainful activity (Ex. 2D - 6D)</u>. Therefore, [his] past relevant work as a cashier II (described at DOT # 211.462-010 as light and unskilled) qualifies as past relevant work (20 CFR 404.1560(b) and 404.1565).

(Tr. 16 (emphasis added).)

Plaintiff argues that "the ALJ incorrectly determined that Plaintiff's work as a cashier II . . . was [PRW] because [the ALJ] mistakenly believed that it was performed at substantial gainful activity levels." (Docket Entry 11 at 6.) In evaluating whether work qualifies as substantial gainful activity ("SGA"), the amount of earnings generally serves as the "primary consideration." 20 C.F.R. § 404.1574(a)(1). In that regard, as Defendant acknowledges, "[t]he regulations use earning guidelines to assist in determining whether a claimant's past work constitutes SGA." (Docket Entry 13 at 5 (citing 20 C.F.R. § 404.1574(b)).) Plaintiff asserts (<u>see</u> Docket Entry 11 at 5-6) and Defendant does not dispute (<u>see</u> Docket Entry 13 at 6-9) that: 1) Plaintiff's only work as a cashier II occurred during his employment with Nic's Pic Kwik, Inc. in 2007; and 2) the applicable regulations set $900/month as the presumptive level of SGA in 2007. The portion of the record cited by the ALJ as establishing that Plaintiff's cashier II work rose to the level of SGA (i.e., Exhibits 2D through 6D) (<u>see</u> Tr. 16) consists entirely of earnings records for Plaintiff (<u>see</u> Tr. 160-

69).[7]  Those records show that Plaintiff had total earnings from Nic's Pic Kwik, Inc. of $360.37 in 2007 (Tr. 167) and no other earnings from Nic's Pic Kwik, Inc. at any time (see Tr. 160-69).

Given the foregoing circumstances (i.e., that the only evidence on which the ALJ relied reflects _total_ earnings for Plaintiff as a cashier II of less than half the monthly threshold set by the Commissioner for SGA), substantial evidence does not support the ALJ's finding(s) that Plaintiff's prior cashier II work constituted SGA and, by extension, PRW.[8]  Moreover, because cashier II work represented the only PRW to which the ALJ found Plaintiff could return, the adverse finding rendered against him at step four cannot stand.  Plaintiff's instant claim thus should have proceeded to step five, where Defendant would have held the burden of showing the availability of jobs Plaintiff could perform, in light of his

---

[7] The record actually does not contain an Exhibit 6D (see Tr. 19); rather, Exhibit 1E (a Disability Report completed on April 27, 2010, that says nothing about Plaintiff's prior employment) follows Exhibit 5D.  (See Tr. 169-72.)

[8] Defendant seeks to avoid this result by pointing to a "Work History Report [in which] Plaintiff reported that when he worked as a cashier at 'Nics [sic] Pic Kwik Inc.,' he worked three to five days per week, six to eight hours per day, and was paid $7.00 per hour (Tr. 191, 193)."  (Docket Entry 13 at 6.) From those figures, Defendant deduces that "Plaintiff earned anywhere between $504 to $1,120 per month."  (_Id._)  However, taking the median number of days and hours worked from that estimate (i.e., four days per week and seven hours per day), as seems appropriate when projecting a monthly total from the ranges given, Plaintiff's monthly earnings come to less than the $900 sum recognized by regulation as SGA.  Further, Defendant's invocation of that Work History Report, as well as her attempt to marshal elements of Plaintiff's testimony to show that the ALJ could have deemed Plaintiff's work as a cashier II to qualify as SGA even though his actual earnings presumptively counseled otherwise (see id. at 7-9), cannot save the ALJ's PRW ruling because (as discussed above), in rendering that ruling, the ALJ explicitly relied only on Plaintiff's earnings records.  See Securities & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that [the administrative agency's] action was based."); Patterson v. Bowen, 839 F.2d 221, 225 n. 1 (4th Cir. 1988) ("We must, however, affirm the ALJ's decision only upon the reasons he gave.").

RFC and his "vocational capabilities (age, education, and past work experience) to adjust to a new job," Hall, 658 F.2d at 264-65; see also Hines, 453 F.3d at 567 (observing that, at step five, the Commissioner bears the "burden of proving that [the claimant] remains able to work other jobs available in the community").

Here, the ALJ made no explicit, alternative step five finding (see Tr. 16); however, as the ALJ noted (and the record confirms), "[t]he [VE] testified that an individual with [Plaintiff's RFC] could perform [cashier II work]." (Tr. 16; see also Tr. 59-60 (setting out VE's testimony on point).) The ALJ expressly "accepted" that testimony and concluded that, "comparing [Plaintiff's RFC] with the physical and mental demands of [cashier II] work, . . . [Plaintiff] is able to perform it as generally performed." (Tr. 16.) Plaintiff has not contested that a claimant with the RFC found by the ALJ generally could do the job of cashier II. (See Docket Entry 11 at 4-19).[9] Moreover, neither the relevant vocational factors (i.e., Plaintiff's age, education, and past work experience) nor the nature of the cashier II job would suggest that Plaintiff lacked the capacity to adjust to such work.

---

[9] Notably, one of our neighboring courts recently upheld a finding that a claimant with an RFC similar to the one attributed to Plaintiff, i.e., "the RFC to perform less than a full range of light work . . . [with] specific limitations . . . [of] a sit-stand option every 45 to 60 minutes . . . and . . . no quota requirements," Stokes v. Astrue, No. 5:11CV74D, 2013 WL 588989, at *3 (E.D.N.C. Jan. 23, 2013) (unpublished); recommendation adopted, 2013 WL 588984 (E.D.N.C. Feb. 14, 2013) (unpublished), could perform cashier II work, see id. at *3, 7.

First, at the time of his hearing, Plaintiff was 48 (Tr. 44) and, by regulation, for "a younger person (under age 50), [the Commissioner] generally do[es] not consider that [such] age will seriously affect [the] ability to adjust to other work," 20 C.F.R. § 416.963(c). In addition, Plaintiff possessed a high school equivalency degree and completed a year of community college. (Tr. 35.) The Commissioner "generally consider[s] that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 416.964(b)(4). Further, Plaintiff's earnings records reflect work experience (Tr. 161)[10] and, "even if [he] ha[d] no work experience, [the Commissioner] may consider that [he was] able to do unskilled work because it requires little or no judgment and can be learned in a short period of time," 20 C.F.R. § 416.965(a). Finally, the job of cashier II qualifies as "unskilled," Terry v. Sullivan, 903 F.2d 1273, 1276-77 (9th Cir. 1990); Strong v. Apfel, 122 F. Supp. 2d 1025, 1028 n.2 (S.D. Iowa 2000), and "it is a tough sell to assert that the cashier II occupation does not exist in significant numbers, especially when [the Occupational Employment Quarterly shows] one million jobs nationally," Veach v. Commissioner, Soc. Sec. Admin., No. 1:13CV76DBH, 2014 WL 35362, at *2 n.1 (D. Me. Jan. 6, 2014) (unpublished); see also Manzo v. Astrue, 226 F. App'x 686, 686 (9th

_____

[10] In the 15 years preceding the ALJ's ruling, Plaintiff held jobs from which he garnered annual earnings exceeding $5,000 in 12 years, including annual earnings exceeding $10,000 in five of those years. (Tr. 161.)

Cir. 2007) (holding that ALJ "did not err when he decided that the number of Cashier II jobs, which [the plaintiff] could perform, was significant within the meaning of the law").

All of these considerations might well have dictated the conclusion(s) that the ALJ's failure to explicitly state that Plaintiff could not prevail at step five constituted harmless error and that the Court should affirm the finding of no disability (based on the existence of cashier II work that someone with his RFC could do), if Plaintiff's challenge to his RFC lacked merit. However, as set forth below, Plaintiff has shown that the ALJ committed consequential errors while formulating that RFC and, therefore, the ALJ's finding that Plaintiff could perform the job of cashier II (which rested in material measure on that RFC) cannot stand (at least on the present record).

## 2. RFC Formulation

According to Plaintiff, in adopting his RFC, "the ALJ did not fairly characterize [Plaintiff's] testimony and did not fully consider the factors [the ALJ] was required to evaluate in assessing [the] credibility [of Plaintiff's symptom reporting]" (Docket Entry 11 at 7) and "[t]he ALJ did not properly evaluate the opinion of Dr. [James] Skeen, one of [Plaintiff's] treating physicians" (id. at 16). These contentions have merit.

a. Plaintiff's Symptom Reporting

During the formulation of the RFC, the ALJ took note that,
"[a]t the hearing, [Plaintiff] testified that he was unable to work
due to pain in his back [as well as] pain and numbness in his legs
. . . . [Plaintiff] said that pain in his lower back radiated down
to both legs, and if he sat for too long, his legs and feet went
numb." (Tr. 14; see also Tr. 29-30 ("Q . . . [T]ell me a little
bit about the impairments that you allege prevent you from being
able to work today. A I have severe osteoporosis of the spine.
I have cervical spine disease, degenerative disk disease. . . .
And with the osteoporosis of the spine, my legs go numb and it's
hard to walk at times. Severe pain in my lower back and in my legs
to my feet . . . ."); Tr. 34 ("[I]t kills me to sit down a lot
. . . ."); Tr. 36-37 ("Q What caused you to stop working at your
last position? A I was finding more severe pain in my back and my
legs. My legs actually going numb. . . . The back pain got worse
so I just knew it was . . . time for me to stop. The pain was just
getting unbearable.").) The record confirms that the ALJ did not
adequately assess that testimony under applicable law.

The Social Security Administration's Policy Interpretation
Ruling Titles II and XVI: Evaluation of Symptoms in Disability
Claims: Assessing the Credibility of an Individual's Statements,
SSR 96-7p, 1996 WL 374186, at *2, as applied by the Fourth Circuit
in Craig, 76 F.3d at 594-95, provides a two-part test for

evaluating a claimant's statements about symptoms, including pain. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the symptoms, as well as the extent to which they affect the claimant's ability to work. Id. at 595. At that point, the fact finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

In this case, the ALJ ruled as to part one that Plaintiff's impairments reasonably could have produced the alleged symptoms. (Tr. 14.) Regarding part two, the ALJ found Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms not credible to the extent it suggested restrictions greater than set forth in the RFC. (Id.; see also Tr. 16 ("After a careful review of the medical evidence and [Plaintiff's] testimony, the undersigned has found [Plaintiff's] allegations only

15

partially credible.").)  In challenging that latter finding by the
ALJ, Plaintiff's brief notes that "[t]he Commissioner's regulations
affirm that [the Social Security Administration] 'will not reject
[a claimant's] statements about the intensity and persistence of
[his or her] pain or other symptoms or about the effect [the
claimant's] symptoms have on [his or her] ability to work <u>solely</u>
<u>because the available objective medical evidence does not</u>
<u>substantiate [the claimant's] statements</u>.'"  (Docket Entry 11 at 9
(quoting 20 C.F.R. § 404.1529(c)(2)) (emphasis added).)

Here, in discrediting Plaintiff's testimony about the extent
and limiting effects of his back pain, the ALJ relied on the
absence of objective medical evidence corroborating Plaintiff's
account.  (<u>See</u> Tr. 14-15 ("Dr. Skeen's treatment records contained
minimal objective findings to corroborate [Plainitff's] level of
pain.  [Plaintiff] in 2010 made three emergency room visits for
back pain . . . and at each visit [he] was neurologically intact.
Although [he] had slightly antalgic gait, straight leg raising was
negative, . . . [he] walked without difficulty, and had full range
of motion . . . .  At every visit to his primary physician after
the alleged onset date, [Plaintiff] had normal movement of all
extremities, normal gait, and normal stance." (internal
parenthetical citation omitted)).)  In addition, the ALJ cited the
following <u>other</u> justifications for discounting Plaintiff's
testimony as to his level of pain:

1) "before the alleged onset date, [Plaintiff] had a long history of back . . . pain, and he continued to work" (Tr. 14);

2) "[a]fter the alleged onset date, treatment notes indicate a history of generally routine and conservative treatment" (id.);

3) "visits with Dr. Skeen became less frequent, scheduled from more than once a month to every two months" (Tr. 15);

4) "[Plaintiff's] own testimony reflected only minimal difficulties in performing activities of daily living" (Tr. 16); and

5) "objective evidence show[ing] stablization of [Plaintiff's] physical . . . symptoms [was] . . . corroborated by the testimony of [Plaintiff] and the report of his sister" (id.).

Beyond these five grounds, the ALJ's credibility determination rests only on the absence of objective medical evidence corroborative of the level of symptomatology reported by Plaintiff, an inadequate foundation under the applicable regulation, see 20 C.F.R. § 404.1529(c)(2). (See Tr. 14-16.) Moreover, as detailed below, the five above-quoted observations by the ALJ suffer from defects that preclude the Court (at least on the present record) from treating them as viable support for the ALJ's discrediting of Plaintiff's testimony at part two of the Craig analysis.

First, the mere fact that Plaintiff worked for a time after initially experiencing back pain typically would not warrant an inference that his back pain failed to become disabling by the

alleged onset date (or some other date before the ALJ's decision),
given the generally progressive nature of Plaintiff's back
conditions (particularly his "lumbar degenerative disc disease,
with osteoporosis" (Tr. 11)). See Ambrose v. Colvin, No. 12-3014,
2013 WL 1914817, at *6 n.6 (W.D. Ark. May 8, 2013) (unpublished)
("Osteoporosis is a progressive metabolic bone disease that
decreases bone density . . . ."); Studard v. Astrue, No. CV-09-331-
CI, 2011 WL 472163, at *4 (E.D. Wash. Feb. 4, 2011) (unpublished)
("[I]n progressive diseases, such as degenerative disk disease, the
date of onset is frequently unclear . . . ."); Anthis v. Astrue,
No. 1:08CV99, 2009 WL 1116339, at *2 (W.D. Ky. Apr. 24, 2009)
(unpublished) ("Degenerative disc disease is progressive . . .;
thus, a change in level of severity over the course of twelve
months would not be unexpected . . . ."); Cali v. Danek Med., Inc.,
24 F. Supp. 2d 941, 945 (W.D. Wis. 1998) ("Degenerative disc
disease is the progressive deterioration of the intervertebral disc
between the bodies of adjacent vertebrae.  It can lead to pain.").
The ALJ's evaluation of Plaintiff's credibility lacks any
discussion on this subject.  (See Tr. 14-16.)  The Court thus
should require the ALJ to address the issue of the progressivity of
Plaintiff's back condition before accepting (as legitimate grounds
to discredit his symptom reporting) the ALJ's reliance on evidence
"that, before the alleged onset date, [Plaintiff] had a long
history of back . . . pain, and he continued to work" (Tr. 14).

18

Second, the ALJ failed to explain why he termed Plaintiff's treatment for his back conditions after the alleged onset date "generally routine and conservative" (id.), when the record from that period (as noted by the ALJ) reflected that: 1) Plaintiff underwent "repeated lysis of adhesions of his lumbar spine and lumbar and cervical never [sic] blocks" (id. (emphasis added);[11] see also Tr. 796 (setting forth Dr. Skeen's statement that Plaintiff "had epidural steroid injections, epidural lysis of adhesions, nerve root blocks, lumbar and cervical facet diagnostic blocks and radiofrequency denervations));[12] and 2) Plaintiff took prescriptions

---

[11]  "'Lysis of adhesions' is the process of cutting scar tissue within the body to restore normal function and reduce pain." Continental Tire the Americas, L.L.C. v. Illinois Workers' Comp. Comm'n, No. 5-11-92WC, 2012 WL 7070086, at *4 n.3 (Ill. App. Ct. 5th Dist. Apr. 19, 2012) (unpublished). In Plaintiff's case, Dr. Skeen carried out such treatment (on five occasions after the alleged onset date) by injecting medications designed to break down scar tissue via a needle and special catheter inserted in Plaintiff's back.  (Tr. 789, 802, 813, 818, 872.)  Nerve blocks also require the injection of medicine directly into an affected area.  See Areno v. Colvin, No. 4:12CV1669DDN, 2013 WL 5291754, at *4 n.17 (E.D. Mo. Sept. 19, 2013) (unpublished); see also Henson v. Finelli, Hauge, Sanders & Ragland, M.C., P.C., No. E2000-01193-WC-R3-CV, 2001 WL 12411, at *3 (Tenn. Jan. 5, 2001) (unpublished) ("[The doctor] ordered a diagnostic block which is described as, a very small local injection of anesthetic into that area just containing the nerve [to confirm the source of the patient's pain] . . . ." (internal quotation marks omitted)).  Plaintiff received at least one nerve block treatment after the alleged onset date.  (Tr. 808.)

[12]  "Epidural steroid injections involve injecting anti-inflammatory medicine into the sac of fluid around the spine," Yu v. Astrue, 963 F. Supp. 2d 201, 206 n.13 (E.D.N.Y. 2013), and "radiofrequency denervations involv[e] the heat destruction of nerves," Hubert v. Tripaldi, 763 N.Y.S.2d 165, 167, 307 A.D.2d 692, 693 (N.Y. App. Div. 3d Dep't 2003); see also Xcel Energy Servs., Inc. v. Labor & Indus. Review Comm'n, 833 N.W.2d 665, 666 n.7, 349 Wis.2d 234, 246 n.7 (2013) ("A radiofrequency facet denervation refers to a procedure that utilizes bursts of electrical energy in the radiofrequency range to sever the nerve supply of the facet joints, which are found on the faces of adjacent vertebrae.").  Plaintiff apparently underwent such procedures shortly before his alleged onset date.  (Tr. 831, 835.)

of "Lorcet, Endocet, Percocet, oxycodone, and Neurontin" (Tr. 15;[13]

see also Tr. 796 (documenting Dr. Skeen's report that Plaintiff "has been treated with significant doses of narcotic analgesics and adjunctive pain medications, including gabapentin, Percocet, oxycodone, and morphine" (emphasis added))). (See Tr. 14-16.)

Given the invasive and extensive character of the spinal injection therapies endured by Plaintiff,[14] as well as the powerful and dangerous nature of his prescriptions,[15] the Court should not affirm the characterization of his treatment as "generally routine and conservative" (Tr. 14), without further explanation by the ALJ. See, e.g., Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (questioning whether "regimen of powerful pain medications

---

[13] "Lorcet is a brand name for hydrocodone bitrate[,] . . . a synthetic narcotic analgesic and antitussive with actions similar to codeine [which] is indicated for the relief of moderate to moderately severe pain." Zoll v. Colvin, No. 1:12CV207CEJ, 2014 WL 319037, at *2 n.6 (E.D. Mo. Jan. 29, 2014) (unpublished). "Endocet is a combination medication containing a narcotic pain reliever (oxycodone) and a non-narcotic pain reliever (acetaminophen), which is used to help relieve moderate to severe pain." Smith v. Colvin, No. 12CV5573, 2013 WL 4519782, at *5 n.29 (E.D.N.Y. Aug. 26, 2013) (unpublished). "Oxycodone is a powerful pain-reliever derived from opiates like morphine. It comes in immediate-release forms such as Percocet . . . ." United States v. Webb, 655 F.3d 1238, 1241 n.2 (11th Cir. 2011). "[N]eurontin/gabapentin [is] an anticonvulsant used to treat nerve pain . . . ." Fonseca v. Astrue, No. EDCV10-470MAN, 2011 WL 2412627, at *4 (C.D. Cal. June 10, 2011) (unpublished).

[14] "[N]erve block injections [are] invasive procedure[s] . . . ." Ruggery v. North Carolina Dep't of Corr., 135 N.C. App. 270, 275, 520 S.E.2d 77, 81 (1999); see also Hamall-Desai v. Fortis Benefits Ins. Co., 370 F. Supp. 2d 1283, 1307 (N.D. Ga. 2004) (describing "epidural injections [and] nerve blocks" as "invasive").

[15] "[P]owerful opiods such as oxycodone and hydrocodone . . . can be a dangerous tool in the doctor's black bag." Millennium Labs., Inc. v. Ameritox, Ltd., 924 F. Supp. 2d 594, 597 (D. Md. 2013); see also McClesky v. Astrue, 606 F.3d 351, 352 (7th Cir. 2010) (labeling Neurontin a "powerful and expensive drug[] that many people are reluctant to take"); In re Neurontin Mktg., Sales Practices, and Prods. Liab. Litig., 612 F. Supp. 2d 116, 137 (D. Mass. 2009) (discussing federal government study "establishing an association between Neurontin and suicidality").

and injections can constitute 'conservative treatment'"); <u>Grisel v. Colvin</u>, No. CV13-623JPR, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (unpublished) (noting that "treatment with narcotic pain relievers has generally been found to be nonconservative when combined with . . . steroid or epidural injections"); <u>McGahey v. Harvard Univ. Flexible Benefits Plan</u>, 260 F.R.D. 10, 12 (D. Mass. 2009) (deeming views discrediting the plaintiff's symptom reporting "difficult to reconcile with the diagnoses of [her] treating physicians who are sufficiently convinced of her complaints of pain to prescribe powerful (and potentially addictive) painkillers").

Third, the fact that Plaintiff's "visits with Dr. Skeen became less frequent, scheduled from more than once a month to every two months" (Tr. 15), cannot support a finding that Plaintiff's testimony exaggerated the extent of his back pain, absent adequate consideration of whether his continued bi-monthly appointments with Dr. Skeen still constituted "[p]ersistent attempts by [Plaintiff] to obtain relief of pain," SSR 96–7p, 1996 WL 374186, at *7, and thus "generally len[t] support to [his] allegations of intense and persistent symptoms," <u>id.</u> Because the ALJ's credibility analysis does not confront that question (<u>see</u> Tr. 14-16), the Court should not permit the ALJ to construe any alteration in Plaintiff's treatment schedule as grounds to discredit his symptom reporting.

Fourth, the ALJ did not offer an adequate basis for the assertion that "[Plaintiff's] own testimony reflected only minimal

difficulties in performing activities of daily living" (Tr. 16).
Indeed, in addressing the credibility of Plaintiff's symptom
reporting in the context of the RFC formulation, the ALJ included
no discussion of Plaintiff's testimony about his daily living
activities (<u>see</u> Tr. 14-16) and, elsewhere in the decision, the ALJ
stated only: "In activities of daily living, [Plaintiff] has mild
restriction. He testified that he was able to drive short
distances, cook, clean, and handle his personal care." (Tr. 12.)

In fact, however, Plaintiff did not unambiguously testify that
he could "cook, clean, and handle his personal care"; rather, when
the ALJ interposed "[s]o you take care of all of your needs . . .
– the cooking, cleaning, bathing, those sorts of things" (Tr. 32),
Plaintiff replied: "<u>When I'm able</u>, yes, sir." (<u>Id.</u> (emphasis
added).) The ALJ did not follow-up to clarify the extent of
Plaintiff's ability to perform such functions. (<u>See</u> <u>id.</u>)
Moreover, later in his testimony, Plaintiff indicated that back
pain prevented him from doing much, if any, cooking. (Tr. 42-43
("[I]f I'm able, I might cook me something for lunch, like a frozen
pizza or something like that. But generally, I'd just eat cereal
or a ham sandwich . . . .").) Finally, when asked how often he
drove, Plaintiff testified: "Generally, not much unless I'm going
to the doctors or I go to church. Most of the time, I'd say about
once a week if, if that." (Tr. 33.) Under these circumstances,
the ALJ must further develop the record regarding Plaintiff's daily

living activities and/or must otherwise provide viable support for the characterization of Plaintiff's abilities in that sphere as only minimally compromised, before that factor could substantiate the discounting of Plaintiff's testimony about his degree of pain.

Fifth, in deeming Plaintiff's account of his symptoms not fully credible, the ALJ emphasized that "objective evidence show[ing] <u>stablization</u> of [Plaintiff's] physical . . . symptoms [was] . . . corroborated by the testimony of [Plaintiff] and the report of his sister." (Tr. 16 (emphasis added).) Even if the Court concludes that evidence from Plaintiff and/or his sister "showed stabilization" of his pain, that fact generally would not support the ALJ's finding that Plaintiff's pain fell below a disabling level. See <u>Christie v. Astrue</u>, No. CV10-3448PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (unpublished) ("[T]he fact that [evidence indicated the plaintiff's] condition [w]as 'stable' is not relevant to the credibility analysis. 'Stable' means unchanging. <u>Webster's New World Collegiate Dictionary</u>, 4th Ed. (2006). It does not signify that [the] [p]laintiff's . . . condition was not serious."). The Court therefore should require the ALJ to explain what, if any, relevance any evidence tending to show "stabilization" of Plaintiff's symptoms has to the assessment of his testimony claiming debilitating pain.

In sum, the Court should vacate the ALJ's finding that Plaintiff's testimony about the extent and impact of his back pain

lacks credibility and should remand the case for reassessment of that testimony in a manner consistent with the regulatory mandate that the Social Security Administration "will not reject [Plaintiff's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work <u>solely because</u> the available objective medical evidence does not substantiate [the claimant's] statements," 20 C.F.R. § 404.1529(c)(2) (emphasis added).

### b. Treating Physician Opinion

As a final matter, Plaintiff contends the ALJ improperly evaluated the opinion of Dr. Skeen, one of Plaintiff's treating physicians. (<u>See</u> Docket Entry 11 at 16-17.) Applicable regulations generally require an ALJ to give controlling weight to the opinion of a treating physician as to the nature and severity of a claimant's impairment, on the ground that treating physicians "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).[16] However, "if a physician's opinion is not

---

[16] Effective March 26, 2012, a re-codification moved the treating physician rule to 20 C.F.R. § 404.1527(c)(2), but without substantive change. <u>See</u> 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action preceded that non-substantive amendment, this Memorandum Opinion uses the pre-March 26, 2012 citations.

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178.

In this case, Plaintiff complains that, although Dr. Skeen opined that Plaintiff's "'significant unremitting pain' would 'significantly limit his ability to perform even basic activities of daily living[]' (Tr. 796) [, in formulating the RFC,] [t]he ALJ gave this opinion little weight because 'the objective evidence of record' showed that [Plaintiff] had 'normal neurological and motor functioning, and his own testimony reflected only minimal difficulties in performing activities of daily living[]' (Tr. 16)." (Docket Entry 11 at 16 (emphasis added).) More specifically, Plaintiff objects that "[t]he ALJ's assessment of [Plaintiff's testimony about his] activities of daily living is not supported by substantial evidence and does not provide evidence of inconsistency between Dr. Skeen's opinion and the evidence of record." (Id. at 17.) As detailed in Section II.B.2.a., the ALJ lacked a sufficient basis to characterize Plaintiff's testimony as "reflect[ing] only minimal difficulties in performing activities of daily living." Because the ALJ relied on that faulty characterization to discount Dr. Skeen's opinion, the Court should remand for a reassessment.

### III.  CONCLUSION

Plaintiff has established error(s) warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, that Plaintiff's Motion for Judgment Reversing Judgment of the Commissioner or Remanding the Cause for Rehearing (Docket Entry 10) be granted in part and denied in part, in that the Court should vacate the RFC adopted by the Commissioner, the Commissioner's step four finding that Plaintiff can perform PRW, the Commissioner's adverse credibility finding at part two of the <u>Craig</u> analysis, and the Commissioner's decision to give little weight to the opinion of Dr. Skeen about Plaintiff's capacity for daily living activities, and should remand the case for administrative reassessments of the credibility of Plaintiff's symptom reporting regarding his back, as well as of Dr. Skeen's opinion that Plaintiff's back pain significantly limited his ability to perform activities of daily living, followed by reformulation of Plaintiff's RFC (if appropriate, in light of the required reassessments) and a step five determination as to the availability of jobs Plaintiff can do.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 30, 2014